IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| KEVIN J. MANGUM § | |
| § | |
| VS. § | CIVIL ACTION NO. G-05-507 |
| § | |
| HUISH DETERGENTS, INC. § | |

## REPORT AND RECOMMENDATION

Before the Court are competing Motions for Summary Judgment. After consideration of the Parties' submissions and a complete review of the file this Court issues this Report and Recommendation to the District Court.

Plaintiff, Kevin Mangum, filed this suit complaining of discriminatory, retaliatory and defamatory acts taken against him by his ex-employer, Defendant Huish Detergents, Inc.. Mangum was represented by counsel when this suit was filed, but counsel was permitted to withdraw and Mangum is now before the Court *pro se*. Mangum's original complaint contains general language of Huish's alleged wrongful conduct, but contains very little factual specificity. As a result, it is difficult to ascertain the precise factual basis of Mangum's claims. The Court has, therefore, made its best effort to determine Mangum's factual basis from his complaint, his deposition testimony, the Defendant's recitation of the relevant facts where not seriously disputed by Mangum in his summary judgment response, and the documents submitted by both Parties. With that *caveat*, the Court believes the relevant undisputed facts are set forth below.

## FACTS

In January 2002, Mangum was hired by Huish as a "Helper" at its newly opened plant in Pasadena, Texas. Huish manufactures soaps and detergents, and its Pasadena plant's primary

purpose is to produce a powder substance used in its cleaning products, Methyl Ester Sulfonate (MES), a substance to which Mangum is, unfortunately, allergic. Despite his allergy, Mangum worked at bagging and loading MES as a Helper and as a "Material Handler 3" after a title change in July 2003. According to Huish, an initial adverse reaction to MES exposure is not uncommon and usually disappears after a short period of time.

On June 1, 2004, after suffering an allergic reaction, Mangum declined, for medical reasons, to continue loading MES on to trucks. The next day his doctor issued a note that Mangum should not work around soap. After Huish refused to let Mangum return to work with that limitation, the doctor revised his opinion and authorized Mangum to work without direct contact with MES. Huish permitted Mangum to return to work pending his next doctor visit in July, but only in certain areas of the plant. Mangum returned to work on June 8, 2003. At the end of the day, pursuant to a request that he meet with his supervisor, Mangum entered the plant warehouse where his plant supervisor's office is located. The warehouse is the area of the plant with the highest MES levels and Huish, therefore, found that Mangum had violated his restrictions and ordered him "off work" unless or until the doctor lifted his restrictions. Mangum began receiving worker's compensation benefits. After Mangum's benefits expired in December 2004 a series of letters were exchanged between Huish and Mangum attempting to determine whether Mangum could return to work. In February 2005, Huish determined that Mangum's allergy was a permanent condition which precluded him from performing a full-time job at the plant and he was terminated, effective March 21, 2005.

ADMINSTRATIVE PROCEEDINGS

On March 4, 2002, Mangum filed a discrimination charge with the Texas Commission on Human Rights (TCHR) alleging race and age discrimination; the charge was dismissed on August 26, 2002, and no lawsuit was filed by Mangum within the 90 day limitations period.

The EEOC charge made the basis of this action was filed with the TCHR on January 12, 2004, approximately 14 months before Mangum's termination. The complaint was amended on June 14, 2004, and again on January 28, 2005. It was dismissed on March 30, 2005.

JURISDICTION

This action was timely filed on June 27, 2005, in state court. It was removed by Huish on September 16, 2005. This Court, therefore, has jurisdiction over any claims previously presented to the EEOC in Mangum's second charge of discrimination.

ANALYSIS

As stated above, it is somewhat difficult to identify the exact nature of Mangum's claims from his pleadings and submissions. In its Motion for Summary Judgment Huish has identified seven claims it believes Mangum is asserting. In his response, Mangum has not taken issue with Huish's determination of what his generic claims are or offered arguments as to the existence of others. This Court will, therefore, analyze the Motions in accordance with the general categorizations that the Parties, themselves, appear to accept as accurate.

Mangum's claims of discrimination and retaliation will be analyzed under the well settled federal law which requires Mangum to establish a *prima facie* case; Huish, where necessary, to offer some legitimate non-discriminatory reason for its actions; and Mangum to, thereafter, persuade the Court that there is sufficient evidence to submit the issue of pretext to a Jury. See

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) (Discrimination claims); Jones v. Flagship Intern., 793 F.2d 714, 725 n.11 (5th Cir. 1986) (Retaliation claims)

Mangum's defamation claim will be analyzed under Texas law. Randall's Food Markets, Inc. v. Johnson, 891 S.W.2nd 640 (Tex. 1995)

Discipline

On May 8, 2003, during his active employment at Huish, Mangum was assisting another employee, Mark Ferguson, during the movement of two railroad cars. Mangum was acting as the "ground man" giving information to Ferguson who was driving the "railking." During the railcar movement one of the cars derailed. In an Incident Notification Form sent to OSHA the resultant costs were estimated at $800.00; Huish now contends the actual cost it incurred to remedy the situation was $4,500.00. An investigation concluded that Mangum failed to keep a proper lookout and was, therefore, at fault; a determination Mangum disputes. Following the investigation, Mangum was placed on probation for 90 days from May 20, 2003 until August 18, 2003; the basis of the probation was the derailment and excessive absences from work.

Mangum claims that this disciplinary action was discriminatory. At his deposition, he testified that an incident in March 2004 involving two white males resulted in no probation. Mangum did not witness this incident, he was told about it when he returned to work the next day, but he heard that a ladder on a railcar was damaged. According to Huish's summary judgment evidence, its employee, Mike Spradley, and a temporary employee, Justin Holmes, were moving railcars. During the operations Holmes, the temporary employee, failed to properly set a railcar's brake and it rolled into another railcar causing little or no "chargeable" damage. The employees received verbal warnings and were retrained.

Mangum's disciplinary claim fails for at least three reasons. First, when a Plaintiff alleges that similarly situated employees in a non-protected class were disciplined less severely, he must show that the circumstances leading to the discipline were nearly identical. Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995)   Here, the incidents were similar only because they involved the movement of railcars; all the other circumstances surrounding the incidents are dissimilar. Mangum's incident resulted in a costly derailment while the other resulted in little or no damage. Mangum, a full time employee, was found, rightly or wrongly, to be at fault while a temporary employee was found at fault in the latter incident. Second, Huish placed Mangum on probation for some legitimate non-discriminatory reasons: the costly derailment and an excessive number of absences. Regardless of Mangum's race or age these are legitimate bases for disciplinary action. And third, Mangum has offered no additional evidence that the disciplinary action was motivated by any discriminatory animus, other than his subjective believe, which is legally insufficient to support a jury question on pretext. McKey v. Oxidential Chemical Corp., 956 F.Supp. 1313, 1319 (S.D. Tex. 1997)   This claim must be dismissed.

### Terms and Conditions

At his deposition, Mangum complained that he was often forced to work alone while employed as a Helper bagging EMS. Mangum ceased being a Helper in June 2002 when he was promoted to the position of Chemical Operator. Since the EEOC charge underlying this cause of action was not filed until January 12, 2004, this claim must be dismissed as time-barred by 42 U.S.C. § 2000e-5(e)(1), which requires an EEOC charge of discrimination to be filed within 300 days of the employer's challenged actions.

Mangum also charged that he was "subjected to unequal wages as compared to other operators." However, at his deposition Mangum testified that he did not think any people in his same job classification were being paid more. Huish's unrebutted summary judgment evidence shows the other warehouse Material Handlers were paid the same or less than Mangum. The gravamen of a discriminatory compensation claim is that the Plaintiff must prove that he was paid less than similarly situated non-protected class employees, Lowery v. University of Houston, 82 F.Supp. 2nd 689, 696 (S.D. Tex. 2000), not, as it appears Mangum asserts, that he was not promoted to better paying positions. Moreover, the other similarly classified Huish employees were members of a protected class. In the absence of evidence to establish a necessary element of a claim, the claim must be dismissed.

Mangum lastly claims that when Huish, in July 2003, redesignated his position of "Chemical Operator 1" as "Material Handler 3" it acted with a discriminatory intent. The basis of his complaint appears to be that because this "transfer" did not involve a raise it was discriminatory. The summary judgment evidence shows that this redesignation was nothing more than a change in the title of Mangum's position to make it compatible to the actual job he was performing: handling and moving materials, as opposed to running the processing unit which was the other area of responsibility for a Chemical Operator 1 position. No changes occurred to Mangum's job duties, his pay or his benefits. To prevail on a change of position claim, Mangum would have to prove that he suffered some adverse employment action, not that he was denied some employment reward. A mere change in the title to Mangum's position, without a change in his duties, pay or benefits, is not an adverse employment action despite Mangum's contrary perceptions and disappointment. Martin v. Kroger Co., 65 F.Supp. 2nd 516, 536 (S.D. Tex. 2001)

Accordingly, even if there were undeniable evidence that Huish redesignated this position with some discriminatory motive, Mangum would have no claim because he suffered no legally cognizable loss.

### Harassment

It is extremely difficult to establish the existence of actionable hostility in the work environment sufficient to support an harassment claim; however, that difficulty cannot excuse a failure to present the claim, in the first instance, to the EEOC or the TCHR.  If a claim is not presented to the administrative body before suit is filed, it is considered unexhausted and a United States District Court has no jurisdiction to even consider it.  <u>Randel v. United States Departmet of Navy</u>, 157 F.3d 392, 295 (5th Cir. 1998)    Mangum did not submit an harassment claim in his January 12, 2004, Charge of Discrimination, therefore, the District Court lacks subject matter jurisdiction to address its merits.

### Discharge

Approaching Mangum's discriminatory discharge claim in reverse order, the Court finds that there is no evidence that the legitimate non-discriminatory reason given by Huish for its termination decision, Mangum's permanent allergy to MES, was a pretextual one.  It is true that Mangum worked at the plant for over two years without any apparent problems, but that may well have been because Mangum never complained about MES exposure until June 1, 2004;  Huish is not required to be clairvoyant.  Thereafter,  Huish permitted Mangum to return to work on June 8, 2004, under MES restrictions which allowed him to "work on any raw materials.  North Road is good, Caustic down to Palm and ME is good" but to "stay away from MES" and "not to enter warehouse."  But on that very afternoon, Mangum went into the warehouse to meet with his

supervisor rather than contact him in some other manner.  As a result, Mangum was placed "off from work" for an evaluation period.  During a nine month evaluation period Huish tried to monitor Mangum's medical condition to determine if and when he might return to work.  Unfortunately, for Mangum, Huish determined that there was no permanent full-time job that he could perform at the plant limited those areas free of potential MES exposure.  Throughout this period of time Mangum remained on Huish's inactive payroll, in fact, he received full compensation benefits until they expired on December 5, 2004.  Finally, on March 21, 2005, after all re-employment options were exhausted and Mangum's allergy was determined to be permanent, he was terminated.

      Mangum has offered no persuasive evidence to support his accusation that the decision to terminate him was really motivated by some discriminatory intent.  His belief that if Huish "wanted me to stay…they could have found a place to put me" is not enough.  McKey, 956 F.Supp. at 319 (Personal belief or speculation insufficient to create fact issue as to pretext)  Moreover, even if it were true that Huish may have been able to create some job Mangum could have performed, it has no legal obligation to do so.  Cf. Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1094 (5th Cir. 1996) (Employer not required to create a new job category for disabled worker)   Mangum's argument that Huish's decision to allow a white male to return to work after he recovered from chemical burns that he suffered at the plant is inapposite; that employee, David LaGrand, reached maximum cure and was able to fully perform his required duties.  Mangum is allergic to MES, the principle product produced by Huish at the plant, therefore, if he cannot risk exposure to MES, he cannot work at the plant.  Huish did not cause Mangum's allergy and there is no evidence the decision was, under these circumstances, anything but race and age neutral.

<u>Failure to Promote</u>

Huish initially, and rightly, points out that Mangum's attorney failed to allege this claim in Mangum's original complaint. But, Mangum is now acting *pro se* and this Court would certainly consider allowing him to amend his complaint to raise this claim even now. After all, Mangum made this claim in his Charge of Discrimination and it is, the Court suspects, the foundation for all of the other discrimination claims presented by Mangum. Therefore, the Court will address its merits now, in order to avoid postponing what appears to be inevitable.

There appear to be three potential promotions Mangum could question. First, he was not promoted to the Lurgi area of the plant in and around January of 2003. It is not clear that Mangum was actually denied this promotion, but it does not legally matter because any such claim would be time-barred since it was asserted in Mangum's Charge of Discrimination filed on January 12, 2004, more than 300 days after the alleged discriminatory denial.

Second, Mangum complains of the denial of a promotion to a higher level of "Operator" in April 2003. According to a letter dated May 20, 2004, and authored by Debbie Mair, Huish's Human Resources Manager, Huish defended itself against this specific allegation, raised by Mangum in a letter dated May 7, 2004, by claiming Mangum had never "asked to take the test to be promoted to a Chemical Operator 2 position, much less a Chemical Operator 3 position." This letter was submitted by Mangum as supplemental summary judgment evidence. In an affidavit of Mair, submitted to the Court by Huish with its Motion for Summary Judgment, she again asserts that Mangum "did not apply for a position to a higher operator position in April 2003." Mangum has offered no summary judgment evidence to refute these factual allegations and it is incumbent upon a Plaintiff who complains of being denied a promotion to show that he applied for the job

9

in question. McDonell Douglas Corp. v. Green, 411 U.S. 792 (1973)    In the absence of any evidence that Mangum applied for these jobs or that Huish illegally impeded him from doing so, he cannot establish the necessary *prima facie* case.  Jones, 793 F.2d at 724

Mangum's third potential promotion was to that of Chemical Operator 4 in August 2003. Once again, according to Mair, Mangum did not apply for the promotion; a factual allegation Mangum does not attempt to refute.  Moreover, as to this promotion, which was posted from August 7 through August 17, Mangum was not eligible for promotion because he was still serving his 90 day probation.  Both Mangum's failure to apply for the promotion and his ineligibility to do so defeat this claim.

Mangum's general discontent over not being promoted by Huish during his employment there from January 2002 through March 21, 2005, to a job to match his perception of his experience and qualifications is not, without the specific factual showings required by law, cognizable.

Retaliation

Mangum complains that Huish terminated him for filing his administrative Charge of Discrimination.  The summary judgment evidence does not support Mangum's retaliation claim. Mangum filed his Charge of Discrimination on January 12, 2004.  He was not terminated until 14 months later.  This long delay negates any inference of discriminatory retaliation, Eugene v. Rumsfeld, 168 F.Supp. 2d 655, 682 (S.D. Tex. 2001) and Mangum has offered no other evidence of causation. Indeed, Mangum's work career belies this claim. Mangum was promoted once, was offered but refused two other promotions, was given satisfactory reviews and given two raises. While he was "off from work" he was kept on the payroll for over nine months despite his

pending Charge of Discrimination. Finally, when it was determined that Mangum was unemployable by Huish at its plant he was terminated. No summary judgment evidence establishes, or even suggests, retaliation was the motive behind Huish's decision to terminate Mangum.

### Defamation

The essential element of a defamation claim is the utterance of an untrue defamatory statement by the Defendant. Randall's Food Market, Inc. v. Johnson, 891 S.W.2d 640, 646 (Tex. 1995)   In this case, Mangum has produced absolutely no evidence that any agent of Huish made any false statement designed to injure or destroy Mangum's reputation. Without such evidence, this claim fails.

### CONCLUSION

The law does not guarantee that an employee will be afforded a utopian work place free from adverse employment decisions by employers. The law only promises a work place free from certain class-based discrimination. Therefore, even if some actions taken by Huish which affected Mangum may have been erroneous or unduly harsh, those actions are not actionable without the showing of a discriminatory motive. This Court is not defending or condemning any decisions Huish made, it is simply finding that Mangum has failed to produce sufficient evidence from which a reasonable Jury could conclude that Huish's motives were unlawful.

For all of the foregoing reasons, it is the **RECOMMENDATION** of this Court that the Motion for Summary Judgment (Instrument no. 33) of Defendant, Huish Detergents, Inc., be **GRANTED** and that the Complaint (Instrument no. 1) of Plaintiff, Kevin Mangum, be **DISMISSED in its entirety**.

It is the further **RECOMMENDATION** of this Court that the Motion for Summary Judgment (Instrument no. 38) of Plaintiff, Kevin Mangum, be **DENIED**.

The Clerk **SHALL** send a copy of this Report and Recommendation to the Parties who **SHALL** have until **September 22, 2006** in which to have written objections, filed pursuant to 28 U.S.C. §636(b)(1)(C), **physically on file** in the Office of the Clerk. The Objections SHALL be electronically filed and/or mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553. Failure to file written objections within the prescribed time **SHALL** bar the Parties from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this _____31st_____ day of August, 2006.

_____
John R. Froeschner
United States Magistrate Judge